# United States Court of Appeals
## For the First Circuit

No. 00-1665

UNITED STATES OF AMERICA,
Plaintiff, Appellee,

v.

REAL PROPERTY, BUILDINGS, APPURTENANCES AND IMPROVEMENTS
LOCATED AT 221 DANA AVENUE, HYDE PARK, MASSACHUSETTS,
Defendant, Appellant,

and

KATHLEEN GASS,
Claimant, Appellant,

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

Before

Boudin, Lynch, and Lipez,
Circuit Judges.

Brian M. McMahon for claimant-appellant.

Jennifer Hay Zacks, Assistant United States
Attorney, with whom Donald K. Stern, United States Attorney,

and <u>Shelbey D. Wright</u>, Assistant United States Attorney, were on brief, for appellee.

---

February 6, 2001

---

**LYNCH, Circuit Judge**.  Kathleen Gass seeks to stop the government from seizing her family home at 221 Dana Avenue, in Hyde Park, Massachusetts.  The government seeks to seize the property because Kathleen Gass' late husband, William Gass, used it for his side business as a drug dealer, unbeknownst to his wife and child.  Mrs. Gass first learned her husband had used the ground floor apartment for cocaine deals on the day the government arrested him and raided the property.  Mr. Gass, in whose name the house stood, made out a will and left Kathleen Gass the house.  Within ten days, he committed suicide.

The government then started forfeiture proceedings. At the close of evidence, the district court granted the government's motion for a directed verdict and denied Kathleen Gass' motion for entry of judgment.  The court concluded that Kathleen Gass was not entitled to assert the "innocent owner" defense, see 21 U.S.C.A. § 881(a)(7) (1999), since she did not possess an ownership interest in the property until after she had learned that the property had been used for drug dealing. The court also concluded that forfeiture of the property did not constitute an excessive fine under the Eighth Amendment to

-2-

the Constitution.  We now vacate the decision of the district court and direct dismissal of the government's forfeiture case with prejudice on the ground that claimant has satisfied the requirements of the innocent owner defense.

**I.**

The facts are undisputed.  On February 5, 1990, William Gass purchased the property at 221 Dana Avenue, in Hyde Park, Massachusetts.  The deed was issued solely in his name.  Kathleen Gass has lived at the property with William Gass since 1990, and currently resides there, along with the couple's eight year old son, Cedric Gass.  William and Kathleen Gass were married on January 8, 1995, but William did not convey an interest in the property to Mrs. Gass.  For the past decade, Mrs. Gass has worked as an accountant for the Department of Housing and Urban Development, where she earns approximately $30,000 per year.  Although she did not contribute money towards the purchase price of the home or to mortgage payments made before or during her marriage to William Gass, Kathleen Gass consistently contributed to other essential financial needs of the household, including food and

-3-

clothing.  Moreover, since her husband's suicide on January 29, 1998, Mrs. Gass has made the mortgage payments on the property and has made improvements to the property.

Mr. Gass operated a taxi cab business out of the home.  The office for the business was located in a separate apartment on the first floor.  The second floor served as the family home.  Mrs. Gass rarely entered the first floor area, and did not even have a key to her husband's office.

In early 1997, the Drug Enforcement Agency and United States Customs Service started an investigation of William Gass for suspected cocaine distribution.  In 1997, the agents, with the assistance of a confidential informant, arranged several controlled drug buys with Mr. Gass at the property.  On January 8, 1998, Mr. Gass was arrested and charged with cocaine distribution.  Later that day, agents executed a search warrant on the property.  Mr. Gass confessed and accompanied the agents to the property, where he retrieved and turned over to agents 490 grams of cocaine and $59,000. Agents also found a white bucket and scale which had been used, according to the confidential informant, to weigh the

cocaine.  The search was the first time Mrs. Gass became aware

of her husband's cocaine distribution activities.

On January 19, 1998, William Gass executed a will

devising all of his property to his wife.  On January 29,

1998, he committed suicide at the property.

The government filed a complaint for forfeiture of

the property on February 3, 1998.  On February 4, 1998, the

district court found that probable cause existed to believe

the property was subject to forfeiture, and a monition

issued.[1]  Kathleen Gass was appointed executrix of her

husband's will on June 28, 1998.

---

[1]      In a civil forfeiture case, the government must first
establish probable cause to believe that a nexus existed between
the property and specified illegal activity sufficient to
justify forfeiture. This shifts the burden to the claimant, who
must refute the government's prima facie case either (1) by
demonstrating that the property was not in fact used for the
specified illegal activity or (2) by proving that she (the
claimant) did not know about or consent to the illicit activity.
See, e.g., United States v. 15 Bosworth St., No. 00-1215, 2001
WL 2076, at *3 (1st Cir. Jan. 4, 2001); United States v. Cunan,
156 F.3d 110, 116 n.7 (1st Cir. 1998) (internal citations
omitted).  The second of these avenues is commonly called the
"innocent owner" defense, and it must be established by a
preponderance of the evidence.  See 15 Bosworth St., 2001 WL
2076, at *3.

A jury trial on the forfeiture action started on October 18, 1999. At the close of evidence, the government moved for a directed verdict pursuant to Fed. R. Civ. P. 50. Claimant Kathleen Gass moved for entry of judgment pursuant to Fed. R. Civ. P. 58. Over claimant's objection, the district court dismissed the jury since there were no factual disputes to resolve, and ordered additional briefing. On January 3, 2000, the court granted the government's motion for a directed verdict and denied claimant's motion for entry of judgment.

The court rejected both of claimant's central arguments: (1) that she was an "innocent owner" under 21 U.S.C.A. § 881(a)(7) (1999); and (2) that forfeiture of the property would constitute an excessive fine in violation of the Eighth Amendment. See United States v. 221 Dana Ave., 81 F. Supp. 2d 182 (D. Mass. 2000). As to the "innocent owner" defense, the court held that claimant could not prevail because, although entirely unaware of the illegal activities when they were occurring, she nonetheless knew of the property's tainted character before obtaining an ownership interest in it following her husband's death. Id. at 189 (holding that claimant's knowledge is to be measured "at the

time she acquired her property interest as an heir"). Specifically, the court concluded that claimant's spousal right to equitable distribution of marital property upon divorce did not confer an equitable or legal ownership interest independent of a divorce proceeding. See id. at 186-87. The district court also determined that Mrs. Gass had no resulting trust in the home because she did not contribute to the mortgage payments on or the purchase price of the home. See id. at 187. Additionally, the court rejected claimant's argument that her dower interest or, alternatively, her interest as an heir under her husband's will, provided a sufficient ownership interest to enable her to assert the innocent owner defense. See id. at 188-89. In reaching this conclusion, the court accepted the government's contention that to allow a claimant to avoid forfeiture simply by establishing lack of knowledge at the time illegal conduct occurred would create "a major loophole in the forfeiture scheme," whereby "[c]riminals could simply keep family and friends out of the loop, and then transfer property to them to avoid forfeiture." Id. (internal quotation marks omitted).

As to claimant's Eighth Amendment argument, the district court concluded that the fine was not excessive because the harshness of the forfeiture, although significant, was outweighed by, inter alia, the seriousness of her husband's offense, the lengthy sentence and fine he could have received, and the close relationship between the property and the offense. See id. at 191-92 (applying formulation of hybrid instrumentality-proportionality test set forth in United States v. Milbrand, 58 F.3d 841, 847-48 (2d Cir. 1995)).[2] Additionally, the court rejected claimant's argument that seizing the entire property would constitute an excessive fine in a situation where the illegal activity was confined to a separate first floor apartment in the home. See 221 Dana Ave., 81 F. Supp. 2d at 192 ("A[n] entire parcel of land may be subject to forfeiture under 21 U.S.C. § 881(a)(7) even if only part of it is directly connected to drug activity.").

**II.**

---

[2]     The court also concluded that under an instrumentality test, the forfeiture of the subject property "easily survives" Eighth Amendment scrutiny because a "'substantial connection' exists between the property and the drug distribution crimes with which Mr. Gass was charged." Id. at 190 (quoting United States v. 28 Emery St., 914 F.2d 1, 3-4 (1st Cir. 1990)).

-8-

We review de novo the grant of a Fed. R. Civ. P. 50(a) motion for judgment as a matter of law, using the same standards as the district court.  E.g., Russo v. Baxter Healthcare Corp., 140 F.3d 6, 8 (1st Cir. 1998).  The evidence and inferences drawn from the evidence are considered in the light most favorable to the non-moving party (here, the claimant), drawing all reasonable inferences in that party's favor.  Id.; Collazo-Santiago v. Toyota Motor Corp., 149 F.3d 23, 26 (1st Cir. 1998).

Our principal task is to ascertain whether Congress intended the forfeiture provisions of the old civil forfeiture statute[3] to trump the "innocent owner" defense on these facts.  The text of the statute does not address the issue; it provides only:

> that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

21 U.S.C.A. § 881(a)(7) (1999).  This language does not answer a number of questions that arise, such as the nature of the ownership

---

[3]   See 21 U.S.C.A. § 881 (1999).  Congress recently amended the forfeiture statute  through the Civil Asset Forfeiture Reform Act of 2000.  See Pub. L. No. 106-185, 114 Stat. 202, 18 U.S.C. § 983 (U.S.C.A. Supp. 2000).  However, the newly amended innocent owner defense applies only to those forfeiture proceedings "commenced on or after the date that is 120 days after [April 25, 2000]."  Pub. L. No. 106-185, § 21, 114 Stat. at 225; 18 U.S.C. § 983, historical and statutory notes.  The forfeiture proceeding here was commenced on February 3, 1998, and so the amended innocent owner defense does not apply to this case.

interests that must be held by the innocent "owner" and at what time the "innocence" of the owner (in terms of lack of "knowledge or consent") is to be measured.

The legislative history also offers little guidance, although it does instruct us that "[t]he term 'owner' should be broadly interpreted to include any person with a recognizable legal or equitable interest in the property seized."  Joint Explanatory Statement of Titles II and III, Pub. L. No. 95-633, 95th Cong. 2d Sess. (Oct. 7, 1978), reprinted in 1978 U.S.C.C.A.N. 9496, 9518, 9522.

The Supreme Court has construed these statutory terms only once.  See United States v. 92 Buena Vista Ave., 507 U.S. 111 (1993) (plurality opinion).  From that decision we know that: (1) the term "owner" is not limited to bona fide purchasers, id. at 123; (2) for purposes of the relation back doctrine, the government does not become the owner of property before forfeiture has been decreed, and someone who acquires an ownership interest after the illegal acts have occurred may therefore still assert the innocent owner defense, id. at 123-29; and (3) equitable considerations may play some role in construing the statute, id. at 130 (leaving undecided whether "equitable doctrines may foreclose the assertion of an innocent owner defense by a party with guilty knowledge of the tainted character of

-10-

the property"); see also United States v. 10936 Oak Run Circle, 9 F.3d 74, 76 (9th Cir. 1993).

The courts have created various doctrines over the years intended to deal with the practical considerations of how best to effectuate the twin legislative objectives behind forfeiture: the deterrence of drug activities by forfeiture of property involved and the protection of the innocent from loss of their property interests by virtue of their association with drug criminals. See United States v. 6640 S.W. 48th St., 41 F.3d 1448, 1452 (11th Cir. 1995).[4] The deterrence objective applies to both use of drug proceeds and use

---

[4] When Congress first authorized the seizure and forfeiture of proceeds of illegal drug transactions in 1978, it "marked an important expansion of governmental power"; previously, the federal drug forfeiture statute had authorized only the seizure of the illegal substances themselves and the instruments by which they were manufactured and distributed. 92 Buena Vista Ave., 507 U.S. at 121-22. Forfeiture of the proceeds of illegal drug transactions was initially limited to all moneys, negotiable instruments, securities, and other things of value furnished by any person in exchange for a controlled substance, and all proceeds traceable to the exchange. See Psychotropic Substances Act of 1978, Pub. L. No. 95-633, 92 Stat. 3768, 3777. In 1984, Congress enacted section 306(a) of the Comprehensive Crime Control Act, which further expanded civil forfeiture to reach all real property used in violation of the statute. See Pub. L. No. 98-473, 98 Stat. 2050 (1984) (codified at 21 U.S.C. § 881(a)(7) (1988)). This measure was "designed to enhance the use of forfeiture . . . in combatting two of the most serious crime problems facing the country: racketeering and drug trafficking." S. Rep. No. 98-225, at 191 (1984), reprinted in 1984 U.S.C.C.A.N. 3182, 3374. Congress believed that successful law enforcement in this area depended on attacking "the economic aspects" of such crimes through such measures. Id.

of property as an instrument for drug dealing.[5]  As part of its
deterrence objective, forfeiture is meant to prevent drug dealers
from benefitting from their crimes by putting their profits from drug
activities in other hands and also to discourage those associated
with drug dealers from facilitating or even consenting to such
crimes.

The courts of appeals, including this court, have
generally agreed that state law provides the source of the property
interests that determine the applicability of the innocent owner
defense to federal forfeiture complaints.  See, e.g., United States
v. U.S. Currency, $81,000.00, 189 F.3d 28, 33 (1st Cir. 1999); United
States v. One 1973 Rolls Royce, 43 F.3d 794, 805 n. 8 (3rd Cir.
1994); United States v. 1977 Porsche Carrera 911, 946 F.2d 30, 34
(5th Cir. 1991); United States v. 2525 LeRoy Lane, 910 F.2d 343, 347
(6th Cir. 1990).

The agreement of the courts of appeals ends, however, when
another issue is reached.  It is the resolution of that issue which
the government argues should provide the rule of decision for this
case.  The issue is whether the court should look to the claimant's

---

[5]      92 Buena Vista Ave. involved a claim that drug monies had
been used to purchase a home.  See 507 U.S. at 114.  No such claim is
made here; rather, the only claim is that drug activities were carried
out in a separate first floor apartment sometime after the home had
already been purchased.

knowledge at the time of property transfer, or, instead, to his or her knowledge at the time of commission of the illegal acts. The government says that the majority rule is that the claimant's knowledge at the time of transfer governs. The rationale is that the alternative rule, which would look to a claimant's knowledge at the time of the illegal acts, would eviscerate the forfeiture statute by allowing criminals to protect their otherwise forfeitable property interests by simply transferring them to a relative or a friend. The rule the government proposes has been applied, for example, by the Eleventh Circuit in 6640 S.W. 48th St., supra. There, the court held that if a transferee knows about illegal activity that would make the property subject to forfeiture at the time he takes his property interest, he cannot assert an innocent owner defense. See 41 F.3d at 1453; see also 10936 Oak Run Circle, 9 F.3d at 76 ("[T]he statute bars an owner with knowledge of the origin of the property in drug proceeds from asserting 'the innocent owner defense.'"); United States v. 352 Northup St., 40 F. Supp. 2d 74, 81-82 (D.R.I. 1999) (rejecting innocent owner defense where court disbelieved father's testimony that he knew nothing of his son's narcotics trafficking, which provided the funds to purchase the property); United States v. 3 Parcels in La Plata County, Colo., 919 F. Supp. 1449, 1458 (D. Nev. 1995) (claimant must "show the absence of any guilty knowledge with

-13-

respect to the use of the property or the source of the funds with which it had been purchased").

The government would apply this rule here to say that claimant cannot be an innocent owner because she knew of her husband's crimes at the time she took title, which, at the earliest, was not until her husband's death.  See Lonstein v. Rockman, 950 F.2d 77, 80 (1st Cir. 1991) (title vests upon allowance of the will by the probate court, but "the passing of title is deemed to have related back to the date of the testator's death");  Shrewsbury v. Murphy, 130 N.E.2d 559, 560 (Mass. 1955) (real property passes directly to the heirs upon the decedent's death).

One circuit, the government acknowledges, does not follow such a rule.[6]  Specifically, the Third Circuit has held that the innocent owner defense is available to a claimant who shows that he or she did not own the property at the time of the drug transaction,

---

[6]     Additionally, Justice Scalia, in his concurring opinion in 92 Buena Vista Ave., supra, suggested that it would not be absurd to think that post-illegal-act transferees who knew about the illegal act creating the taint at the time of transfer, but not at the time the act occurred, were beyond the reach of the forfeiture statutes.  See 507 U.S. at 139 (Scalia, J., concurring) ("I do not find inconceivable the possibility that post-illegal-act transferees with post-illegal-act knowledge of the earlier illegality are provided a defense against forfeiture. The Government would still be entitled to the property held by the drug dealer and by close friends and relatives who are unable to meet their burden of proof as to ignorance of the illegal act when it occurred.").

-14-

and was not therefore in a position to consent to its use to facilitate drug crimes.  See One 1973 Rolls Royce, 43 F.3d at 819; see also United States v. 1993 Bentley Coupe, 986 F. Supp. 893, 897-98 (D.N.J. 1998) (applying One 1973 Rolls Royce).[7]  The government urges that we adopt the first rule and reject the rule adopted by the Third Circuit, as the Eleventh Circuit has done.

The government's interest in having bright-line tests for forfeiture is certainly legitimate.  Such tests are easy to administer.  They are more predictable and hence provide clearer notice.  It may be that common situations can be governed by bright-line tests.  But the tests cannot be unmoored from the settings to which they are applied, and no single rule can adequately cover all

---

[7]     In United States v. 6109 Grubb Road, 886 F.2d 618 (3d Cir. 1989), the Third Circuit had previously held that an owner who had knowledge that the property was tainted by illegal drug transactions would still be considered an innocent owner upon a showing that he did not consent to the use that caused the taint. See 886 F.2d at 626. Specifically, the court read in the disjunctive the language in 21 U.S.C. § 881(a)(7) barring forfeiture if the claimant could show lack of knowledge or consent.  It therefore allowed the claimant to show either one or the other, as opposed to requiring that he show both. See id.  In One 1973 Rolls Royce, the Third Circuit held that the 6109 Grubb Road analysis applied equally to pre-illegal-act owners (the situation in 6109 Grubb Road) and post-illegal act owners (the situation in One 1973 Rolls Royce).  See 43 F.3d at 819 ("if [claimant] can show that he did not know that the [property] was being used or going to be used [in connection with the illegal transactions] at the time they took place, then he will be able to show that he did not consent to the use and, under 6109 Grubb Road, will be entitled to the innocent owner defense").  Here, however, neither party has argued that the issue turns on whether we read § 881(a)(7)'s reference to "knowledge or consent" in the conjunctive or disjunctive, and therefore we do not reach that issue.

-15-

situations.  More fundamentally, such tests must aim to carry out the dual purposes of Congress in enacting the forfeiture statute: the deterrence of drug crimes and the protection of innocent owners. Although Congress's purposes are somewhat at odds with each other, we do not view the issue before us in quite the same terms as the government -- that is, as posing a choice between a Scylla and a Charybdis, threatening to do harm to one of Congress's purposes or the other.  To the contrary, we see no congressional purpose furthered by rejecting claimant's innocent owner defense on these facts.

The government's argument here has several problems.  Most importantly, it skips past the fact that, under Massachusetts law, claimant had a partial interest in the property, the marital home, at the time of the illegal activity, and that interest existed long before she knew that her husband was dealing drugs.  Thus, as to those interests, we need not reach the broader question of whether, under other circumstances, the innocent owner defense may be asserted by a post-illegal-act transferee with post-illegal-act knowledge -- that is, by a claimant who knew about the illegal activities when he or she acquired the property interest, but who did not know about those activities when they were occurring.  Rather, because the claimant in this case had a partial interest in the property prior to learning about the illegal activities, and because the congressional

-16-

purpose of deterring drug crimes would not be served by forfeiture, we conclude that she may assert the innocent owner defense.

We start with the uncontroverted fact that claimant knew nothing of her husband's drug dealing while it was going on. She learned of it only after his arrest, and there was no further illegal activity thereafter.  She thus clearly satisfies the "innocence" prong of the innocent owner defense, at least as of the time before the arrest.  The question then is whether she had a sufficient interest in the property at this time to also qualify as an "owner" as to that interest.  We think the answer is yes.

Claimant had a type of property interest created by Massachusetts in an effort to protect a spouse's interest in marital property in the event the marriage ends, whether by death or by divorce.  In the case of a spouse's death, Massachusetts recognizes several protected interests, including the dower interest, whereby a surviving spouse receives a life estate in one third of all real property owned by the deceased spouse at the time of death.  See M.G.L.A. ch. 189, § 1.[8]  The Commonwealth also protects surviving

---

[8]     Formerly, a husband received a life estate in one third of all land owned by the wife upon her death, known as tenancy by curtesy,  while the wife received a life estate in one third of all land owned by her husband upon his death, known as tenancy by dower.  The distinction between curtesy and dower has been eliminated, and dower has been made available to either spouse.  See M.G.L.A.  ch. 305, § 1A (1978); 21 Dunphy, Massachusetts Practice § 7.1, at 95 (2d ed. 1997).

spouses against being intentionally or inadvertently disinherited under the deceased spouse's will by allowing the surviving spouse to waive the will and take a share of the decedent spouse's estate as prescribed by the elective share statute; if the deceased statute left issue, the surviving spouse may waive the will and elect to receive at least one third of all real and personal property.  See id. ch. 191, § 15; 14C Alperin & Shubow, Massachusetts Practice § 22.31 (3d ed. 1996).  In situations where a spouse died intestate,

---

The common law property concept of dower developed during the middle ages in England, when land was the main source of wealth and the basis of an agrarian society.  Under the system of femme covert, husband and wife merged into a single legal identity, and all of a woman's property and earnings belonged to her husband.  In return for relinquishing control over all of her property, the law of dower required that the husband provide his wife with support and maintenance, especially during her widowhood.  Dower rights, which attached to the land at the moment of marriage, generally allowed a wife a one third share in a life estate in all freehold land that the husband owned during the marriage and that was inheritable by the legal heirs of the husband and wife.  See Kathleen M. O'Connor, Note, Marital Property Reform in Massachusetts: A Choice for the New Millennium, 34 New. Eng. L. Rev. 261, 272-75 (1999).  During the nineteenth century, Massachusetts, like other states, passed married women's property acts which gave wives greater rights over property and earnings, including the right to keep and manage as their own property that they had brought to or acquired after the marriage by gift, inheritance, bequest, or devise.  See id. at 303 (describing Massachusetts legislation passed in 1845).

-18-

Massachusetts' statute of descent and distribution provides that the surviving spouse is entitled to inherit varying shares of the deceased spouse's estate depending on whether the deceased spouse is also survived by issue or kindred; if the deceased spouse left issue, that surviving spouse takes one half of the personal and real property outright. See M.G.L.A. ch. 190, § 1; 14A Alperin & Shubow, supra, § 11.24.[9] Here, claimant's dower interest amounted to a life estate in one third of the property located at 221 Dana Avenue.[10]

It is true that Massachusetts law describes these dower interests during marriage as "inchoate," Opinion of the Justices, 151 N.E.2d 475, 476-78, 480 (Mass. 1958), and, as the district court accurately noted, they are not full ownership interests, see 221 Dana

---

[9] While the dower interest is a life estate in real property, M.G.L.A. ch. 189, § 1, both a surviving spouse's elective share, id. ch. 191, § 15, and intestate share, id. ch. 190, § 1, are interests in fee simple. In light of these other protections, it is generally no longer advisable for a surviving spouse to claim dower, except under unusual circumstances (such as when the decedent has extensive debts, over which the dower interest had priority). See 21 Dunphy, supra, § 7.1, at 96; see also DuMont v. Godbey, 415 N.E.2d 188, 190 (Mass. 1981) ("Theoretically the surviving spouse could instead claim dower . . . but the dower interest would in most cases be less valuable [than the spouse's intestate share].").

[10] Although dower is taken subject to any encumbrances on the land at the time of death, M.G.L.A. ch. 189, § 1, there was no encumbrance in favor of the United States at the time of death.

<u>Ave.</u>, 81 F. Supp. 2d at 188-89 (discussing dower rights).  The Massachusetts Supreme Judicial Court has nonetheless described the dower interest as "something more than a possibility, and as an interest in property, which equity will under some circumstances protect at the suit of the wife in the lifetime of the husband." <u>Opinion of the Justices</u>, 151 N.E.2d at 478; <u>see also</u> <u>Davis</u> v. <u>Wetherell</u>, 95 Mass. 60, 1866 WL 4942, at *2 (1866) ("[A wife's] inchoate right of dower is a right of a very peculiar nature.  It is a right of which nothing but her death or voluntary act can deprive her, and so it is something more than a mere possibility.").  Moreover, under traditional dower rights doctrine, Mr. Gass lacked the power, acting without claimant's consent, to encumber or sell her dower interest.  <u>See</u> <u>Opinion of the Justices</u>, 151 N.E.2d at 476-78; <u>see also</u> <u>Taylor</u> v. <u>Gowetz</u>, 158 N.E.2d 677, 680 (Mass. 1959) (discussing agreement whereby wife released, inter alia, dower rights); <u>Mathews</u> v. <u>Orlandella</u>, 69 N.E.2d 571, 572 (Mass. 1946) (evidence supported finding that "wife authorized the defendant husband . . . to sell whatever interest she had [in the property], whether it was in her own right or was merely an inchoate right of dower").  The right of dower is superior to any claims of creditors

on the estate of the deceased.  See Opinion of the Justices, 151

N.E.2d at 476; 21 Dunphy, supra, § 7.1, at 96.[11]

In the event of divorce, although a spouse loses the dower

interest, see M.G.L.A. ch. 208, § 27, Massachusetts law, in a sense,

compensates by providing for an equitable distribution of marital

property, see id. ch. 208, § 34 ("In addition to or in lieu of a

judgment to pay alimony, the court may assign to either husband or

wife all or any part of the estate of the other . . . .  In fixing

the nature and value of the property to be so assigned, the court . .

. . may also consider the contribution of each of the parties in the

acquisition, preservation or appreciation in value of their

respective estates and the contribution of each of the parties as a

homemaker to the family unit."); Williams v. Massa, 728 N.E.2d 932,

943 (Mass. 2000) ("The parties' respective contributions to the

marital partnership remain the touchstone of an equitable division of

the marital estate.") (internal quotation marks omitted); Heins v.

Ledis, 664 N.E.2d 10, 15 (Mass. 1996) ("Alimony is an award for

support and maintenance and has historically been based on the common

law duty of the husband to support his wife.  Property division, on

the other hand, is based on the joint contribution of the spouses to

---

[11]    In contrast, the intestate share and elective share do
not take precedence over claims of creditors.  See 14C Alperin
& Shubow, supra, § 22.32.

-21-

the marital enterprise.") (internal quotation marks omitted). Although the interest of a divorced spouse is not involved in this case, Massachusetts's equitable distribution statute further demonstrates the coherence and consistency of the Commonwealth's scheme of protecting spouses, including a spouse's interest in the real property owned separately by the other spouse. See generally, e.g., 14A Alperin & Shubow, supra, § 11.1 ("Although formed by contract, marriage creates a status from which arise automatically property rights of support, dower, and a share in the estate of a deceased spouse.") (internal footnotes omitted).

As it turned out, claimant's husband made a will leaving her all his property. However, this simply had the effect of giving her the interest in intestacy that her child would have held had her husband not made the will. See M.G.L.A. ch. 190, § 1. It also had the effect of removing any reason for claimant to timely file her election and claim of her dower interest in the property to avoid waiver, see id. ch. 189, § 1, the property having been bequeathed to her in its entirety.[12] Thus, we disagree with the district court's conclusion that because claimant did not act to preserve her dower rights, she lost any effect those rights might have had on the

_____

[12] Even if there had been no will, claimant would not have had any reason to claim her dower interest here since her share of the property under the state law of intestacy would have been greater. See id. ch. 190, § 1.

-22-

question of whether she had a sufficient ownership interest in the property.  See 221 Dana Ave., 81 F. Supp. 2d at 188.

We recognize that the Tenth Circuit in United States v. 9844 South Titan Court, 75 F.3d 1470 (10th Cir. 1996), held that where a spouse has only an inchoate interest in marital property, that interest does not amount to an ownership interest for purposes of asserting an innocent owner defense.  See id. at 1477-78.  The case is distinguishable because Colorado law, there the relevant state law, differs from Massachusetts law as to the nature of the inchoate interest.  Indeed, Colorado appears to adhere to a doctrine that Massachusetts explicitly rejected in Opinion of the Justices, supra, where the SJC distinguished other jurisdictions' doctrine that inchoate rights are "not an interest in property, but a mere possibility, created by law, and not in any sense vested or assignable until after the husband's death."  151 N.E.2d at 477-78. Nor did the Tenth Circuit consider the argument, advanced by claimant here, that an interest in property for purposes of sustaining the innocent owner defense arises from  a spouse's dower interest.

In short, given the special protection accorded the claimant's dower interest under Massachusetts law, we think the claimant had a sufficient ownership interest in the property prior to her learning about her husband's illegal activities to allow her to maintain an innocent owner defense as to that interest.  See United

-23-

States v. 116 Emerson Street, 942 F.2d 74, 79-80 (1st Cir. 1991) (recognizing wife's ownership interest in property in forfeiture action by way of a resulting trust, whereby wife and husband had agreed that he would pay downpayment, she would make mortgage payments in the same amount, and both would take an interest in the home); United States v. 15621 S.W. 209th Ave., 894 F.2d 1511, 1516 (11th Cir. 1990) (using Florida law to determine the property interests and determining that no interest exists that can presently be forfeited to the government in property held in tenancy by the entirety); United States v. East Half Section 12, 131 F.R.D. 171, 174 (D. Neb. 1990) (state statute giving a surviving spouse "the right to take a share of a deceased spouse's real estate, in lieu of what he or she may receive under a will" creates a property interest for purposes of the federal forfeiture statute).[13]  At a minimum, that ownership interest is her dower interest in one third of the property.[14]  This raises the question of any remaining interests in

_____

[13]    As the Eleventh Circuit observed in 15621 S.W. 209th Ave., "[b]oth theory and the precedents of [the Supreme] Court teach us solicitude for state interests, particularly in the field of family and family-property arrangements."  Id. at 1519 (quoting United States v. Yazell, 382 U.S. 341, 352 (1966).

[14]    For present purposes, we need not distinguish between the life estate interest of dower and the fee simple interest under the elective share statutes and descent and distribution statute.  See supra note 9.

-24-

the property.  <u>See</u> 21 U.S.C.A. § 881(a)(7) (1999) (innocent owner

protected from forfeiture "to the extent of the [ownership]

interest").

        We do not know whether the government, if it had

recognized that Mrs. Gass was an innocent owner of a one third

interest, would have exercised its prosecutorial discretion to

attempt to forfeit any arguable remaining interest.  In fact, the

government's forfeiture papers claim only an interest in the entire

property, not a lesser interest.  We have little reason to assume the

government would have done so, given the equities of the situation.

But assuming arguendo the government intends the present action to

reach any remaining interests, such effort fails because forfeiture

would not, on these facts, serve any congressional purpose behind the

forfeiture statute.

        It is far from clear that Congress intended the forfeiture

statute to preempt state laws governing family property

arrangements.[15]  The Supreme Court has said in another context that

_____

        [15]     State law may not permit the government, even if it were in
the role of a creditor of Mr. Gass, to force a sale of the property,
<u>see</u> <u>Opinion of the Justices</u>, 151 N.E.2d at 476 (dower rights are
superior to the rights of creditors), and to evict Mrs. Gass,
particularly given that she was his heir at time of death under the
will, <u>see</u> M.G.L.A. ch. 189, § 13; 14C Alperin & Shubow,<u>supra</u>, § 22.32
(surviving spouse may continue to occupy property with heirs or
devisees).  <u>Cf.</u> <u>2525 LeRoy Lane</u>, 910 F.2d at 351-52 (where guilty
husband and innocent wife hold property as tenants by the entirety and
property has been sold, government not entitled to forfeiture at
present and may not even be entitled to forfeiture in the future

-25-

such laws may be overriden by federal courts only where "clear and substantial interests of the National Government, which cannot be served consistently with respect for such state interests [in the field of family and family-property arrangements], will suffer major damage if the state law is applied." United States v. Yazell, 382 U.S. 341, 352 (1966). What is clear to us, for the reasons which follow, is that the federal interests would not suffer major damage from applying state law or from denying forfeiture.

The two primary federal interests underlying the forfeiture statute are the protection of innocent owners and the deterrence of drug crimes. As to the former, courts evaluating an innocent owner defense must consider the importance state-law-created family property rights like the dower interest play in the lives of people like Mrs. Gass, who rely on them in building careers, raising families, and planning for the future. We believe that it is precisely those interests that Congress meant to protect in creating an innocent owner defense to civil forfeiture and that here forfeiture of either the entire property or some portion of it would plainly not serve those interests.

As to the question of deterrence, we believe that no deterrence interest would be served by allowing forfeiture of the

regardless of timing of wife's later knowledge). We need not decide those questions.

property, whether it be the entire property or any portion remaining after assigning Mrs. Gass her dower interest. Specifically, the deterrence interest would not be served as to people like Mrs. Gass, who did not know about the illegal conduct until after it is over, and so would have no incentive to consent or facilitate the conduct. Nor would it be served as to criminal defendants like Mr. Gass, who, by committing suicide, removed any possibility that they might enjoy, even indirectly, the fruits of their crimes. Indeed, the transfer of the total interest in the property was accomplished here only through the criminal defendant's taking of his own life.

The government warns that sustaining an innocent owner defense in these circumstances would create a major loophole in the forfeiture laws by effectively allowing a drug dealer to protect his property by keeping a potential transferee in the dark during the time he engaged in the illegal activity and then transferring the property to that person if and when he got caught. While this concern is reasonable when applied to other sets of circumstances, it tends to lose force in the marital context as to property interests, created by law, of the spouse innocent of wrongdoing, and it is simply misplaced when applied to the particular facts of this case. Here, claimant already had an interest in the property by operation of law before she knew that the illegal activity was occurring. Moreover, had Mr. Gass been more intent on avoiding the possible

-27-

consequences of forfeiture -- had he been a more legally savvy drug dealer -- he could simply have transferred title in the property to his wife when he began to engage in the hidden illegal activities or created a tenancy by the entirety. Cf. 15621 S.W. 209th Ave., 894 F.2d at 1512, 1519-20 (no forfeiture of property held in tenancy by the entirety). This, of course, would have given Mrs. Gass what was in some sense already legally hers under Massachusetts law.

While the new amendments to the forfeiture statute do not apply to this case, the legislative history sheds light on the nature of Congress' interest in deterrence. The legislative history to the recent amendments to the forfeiture statute reinforces that no deterrence interest would be served by denying the innocent owner defense on these facts. It expressly cites the suicide of the wrongdoer as an example of where the deterrent interest would not be served: "The risk of moral hazard here is slight. It is hardly likely that many criminals will commit suicide for the express purpose of foiling imminent seizures by having their property devolved to their heirs." H.R. Rep. No. 106-192 (1999). Here, there is no risk that the wrongdoer would enjoy the property or get any benefit from it, and Congress thought it unreasonable to believe that wrongdoers would commit suicide to avoid forfeiture.

In short, permitting forfeiture here would deter drug dealing only in the most Draconian sense of deterrence. That

Draconian sort of deterrence underlay the ancient common law doctrine that all of a felon's possessions were forfeited to the crown. See Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 682 (1974) ("[At common law the] convicted felon forfeited his chattels to the Crown and his lands escheated to his lord; the convicted traitor forfeited all of his property, real and personal, to the Crown."); see also Michael Paul Austern Cohen, Note, The Constitutional Infirmity of RICO Forfeiture, 46 Wash. & Lee L. Rev. 937, 959 n.2 (1989).[16]   But that ancient doctrine is not part of

_____

[16]   The historical basis for common law forfeiture was that a breach of the criminal law was an offense to the king's peace, which was felt to justify denial of the right to own property. Calero-Toledo, 416 U.S. at 682 (citing 1 W. Blackstone, Commentaries *299).  In 1870, England eliminated most forfeitures of those convicted of felonies or treason by statute.  See id. at 682 n.20.

American law,[17] and we are loath to attribute such an extreme view to a Congress that simultaneously wanted to protect innocent owners.

Thus, on the particular facts of this case, we hold that claimant has established an innocent owner defense as to the property at 221 Dana Avenue.  Our holding is dependent on the combination of the following factors: claimant was innocent with respect to the illegal activities when they occurred and learned of those activities only upon the arrest of her husband, the criminal defendant; claimant had a partial interest in the property by operation of state law while she was undisputedly innocent of any knowledge of wrongdoing;

---

[17]    See United States v. Bajakajian, 524 U.S. 321, 332 (1998) ("Although in personam criminal forfeitures were well established in England at the time of the founding, they were rejected altogether in the laws of this country until very recently.").  As the Supreme Court has noted, "[t]he First Congress explicitly rejected in personam forfeitures as punishments for federal crimes, and Congress reenacted this ban several times over the course of two centuries." Id. at 332 n.7 (internal citations and quotation omitted); see also Ian A.J. Pitz, Note, Letting the Punishment Fit the Crime: Proportional Forfeiture Under Criminal RICO's Source of Influence Provision, 75 Minn. L. Rev. 1223, 1225-26 (1991) ("The architects of American legal history did not view forfeiture favorably. United States lawmakers have been particularly skeptical of in personam forfeiture, a penal measure that requires a defendant to surrender personal property as a penalty for conviction of a criminal offense.").  "It was only in 1970 that Congress resurrected the English common law of punitive forfeiture to combat organized crime and major drug trafficking." Bajakajian, 524 U.S. at 332 n.7 (citing Organized Crime Control Act of 1970, 18 U.S.C. § 1963, and Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 848(a)).

an entire interest in the property passed to her only on the suicide of her husband; and the congressional purpose of deterring drug dealing would not be served by forfeiture in light of all the relevant circumstances.  The parties have agreed that there were no material facts in dispute, so there is little point in remanding this case for further fact finding.[18]

Accordingly, we vacate the decision of the district court and direct dismissal of the government's forfeiture action with prejudice.

So ordered.

---

[18]     Because we have decided this case on statutory grounds, we do not reach claimant's constitutional arguments, which the district court rejected.