# United States Court of Appeals
## For the First Circuit

No. 00-1665

UNITED STATES OF AMERICA,

Plaintiff, Appellee,

v.

REAL PROPERTY, BUILDINGS, APPURTENANCES AND IMPROVEMENTS
LOCATED AT 221 DANA AVENUE, HYDE PARK, MASSACHUSETTS,

Defendant, Appellant,

and

KATHLEEN GASS,

Claimant, Appellant,

———————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

———————————————

Before

Boudin, Chief Judge,
Lynch and Lipez, Circuit Judges.

———————————————

Brian M. McMahon for claimant-appellant.

Jennifer Hay Zacks, Assistant United States Attorney, with whom James B. Farmer, United States Attorney, and Suzanne E. Durrell, Nancy Rue, and Shelbey Wright, Assistant United States Attorneys, were on brief, for appellee.

_____

August 17, 2001

_____

**LYNCH, Circuit Judge**. Kathleen Gass seeks to stop the government from seizing her family home at 221 Dana Avenue, in Hyde Park, Massachusetts. The government seeks to take the property by forfeiture because Kathleen Gass' late husband, William Gass, used a portion of it for his side business as a drug dealer, unbeknownst to his wife and child. Mrs. Gass first learned her husband had used the ground floor apartment for cocaine deals on the day the government arrested him and raided the property. Mr. Gass, in whose name the house stood, made out a will eleven days after the raid and left Kathleen Gass the house. Ten days later, he committed suicide.

The government then started forfeiture proceedings to seize the marital home. At the close of evidence, the district court granted the government's motion for a directed verdict and denied Kathleen Gass' motion for entry of judgment. The court concluded that Kathleen Gass was not entitled to assert the "innocent owner" defense under the former federal civil forfeiture statute, see 21 U.S.C.A. § 881(a)(7) (1999) (amended 2000),[1] reasoning that she did not possess an ownership interest

_____

[1] The new statute, the Civil Asset Forfeiture Reform Act of 2000, applies only to those forfeiture proceedings "commenced on or after [August 23, 2000]." See Pub. L. No. 106-185, § 21, 114 Stat. 202,

in the property until after she had learned that the property had been used for drug dealing and that precluded assertion of the defense. The court also concluded that forfeiture of the property did not constitute an excessive fine under the Eighth Amendment to the Constitution. Mrs. Gass appealed.

In that appeal, this court issued an opinion on February 6, 2001, vacating the decision of the district court and directed dismissal of the government's forfeiture case with prejudice on the ground that claimant had satisfied the requirements of the innocent owner defense. That opinion was reported at United States v. Real Property, Buildings, Appurtenances and Improvements Located at 221 Dana Ave., 239 F.3d 78 (1st Cir. 2001), and has been withdrawn as a consequence of the panel's grant of rehearing on the government's petition. That opinion held that (i) claimant had a protectable interest as to one-third of the property under the dower provisions of Massachusetts law before she knew of her husband's criminal activities and (ii) the policies underlying the federal civil

---

225, 18 U.S.C. § 983, historical and statutory notes (U.S.C.A. Supp. 2000). The forfeiture proceeding here was commenced on February 3, 1998, and so this Act, which substitutes a revised innocent owner defense, does not apply.

forfeiture statute did not support forfeiture of the remaining two-thirds interest in the home. In its petition for rehearing, the government argued that claimant had no cognizable property interest under Massachusetts law before she knew her husband was dealing drugs, and, even assuming she had a one-third interest in the property under state law, that was no basis for blocking the forfeiture of the remaining two-thirds interest in which she had no property right. Further briefing was ordered by the court and duly provided by the parties, and oral argument was held on August 1, 2001.

This court now holds that, under the statute's innocent owner defense, the Gass home at 221 Dana Avenue is not subject to forfeiture. The court thus again vacates the decision of the district court and directs dismissal of the government's forfeiture action with prejudice. Our decision does not reach the question of claimant's ownership interest under state law but accepts arguendo the government's argument that Mrs. Gass acquired her interest in the house after the illegal acts and holds that the federal civil forfeiture statute, as it then stood, does not apply to her as an innocent owner.

**I.**

The facts are undisputed. On February 5, 1990, William Gass purchased the property at 221 Dana Avenue, in Hyde Park, Massachusetts. The deed was issued solely in his name. Kathleen Gass has lived at the property with William Gass since 1990, and currently resides there, along with the couple's son, Cedric Gass, who is less than ten years old. William and Kathleen Gass were married on January 8, 1995; William did not then convey an interest in the property to Mrs. Gass. For the past decade, Mrs. Gass has worked as an accountant for the Department of Housing and Urban Development, where she earns approximately $30,000 per year. Although she did not contribute money towards the purchase price of the home or to mortgage payments made before or during her marriage to William Gass, Kathleen Gass consistently contributed to other essential financial needs of the household, including food and clothing. Moreover, since her husband's suicide on January 29, 1998, Mrs. Gass has made the mortgage payments on the property and has made improvements to the property.

Mr. Gass operated a taxi cab business out of the home. The office for the business was located in a separate apartment on the first floor. The second floor apartment served as the

family home.  Mrs. Gass rarely entered the first floor area, and did not even have a key to her husband's office.

In early 1997, the Drug Enforcement Agency and United States Customs Service started an investigation of William Gass for suspected cocaine distribution.  In 1997, the agents, with the assistance of a confidential informant, arranged several controlled drug buys from Mr. Gass at the property.  On January 8, 1998, Mr. Gass was arrested and charged with cocaine distribution.  Later that day, agents executed a search warrant on the property.  Mr. Gass confessed and accompanied the agents to the property, where he retrieved and turned over to agents 490 grams of cocaine and $59,000.  Agents also found a white bucket and scale which had been used, according to the confidential informant, to weigh the cocaine.  The search was the first time Mrs. Gass became aware of her husband's cocaine distribution activities.

On January 19, 1998, William Gass executed a will devising all of his property to his wife.  On January 29, 1998, he committed suicide at the property.

The government filed a complaint for forfeiture of the property on February 3, 1998.  On February 4, 1998, the district

court found that probable cause existed to believe the property was subject to forfeiture, and a monition issued.[2] Kathleen Gass was appointed executrix of her husband's will on June 28, 1998.

A jury trial on the forfeiture action started on October 18, 1999. At the close of evidence, the government moved for a directed verdict pursuant to Fed. R. Civ. P. 50. Claimant Kathleen Gass moved for entry of judgment pursuant to Fed. R. Civ. P. 58. Over claimant's objection, the district court dismissed the jury since there were no factual disputes to resolve, and ordered additional briefing. On January 3, 2000, the court granted the government's motion for a directed verdict and denied claimant's motion for entry of judgment.

---

[2] In a civil forfeiture case, the government must first establish probable cause to believe that a nexus existed between the property and specified illegal activity sufficient to justify forfeiture. This shifts the burden to the claimant, who must refute the government's prima facie case either (1) by demonstrating that the property was not in fact used for the specified illegal activity or (2) by proving that she (the claimant) did not know about or consent to the illicit activity. See, e.g., United States v. 15 Bosworth St., 236 F.3d 50, 54 (1st Cir. 2001); United States v. Cunan, 156 F.3d 110, 116 n.7 (1st Cir. 1998) (internal citations omitted). The second of these avenues is commonly called the "innocent owner" defense, and it must be established by a preponderance of the evidence. See 15 Bosworth St., 236 F.3d at 54.

The court rejected both of claimant's central arguments: (1) that she was an "innocent owner" under 21 U.S.C.A. § 881(a)(7) (1999) (amended 2000); and (2) that forfeiture of the property would constitute an excessive fine in violation of the Eighth Amendment. See United States v. Real Property, Buildings, Appurtenances and Improvements Located at 221 Dana Ave., 81 F. Supp. 2d 182 (D. Mass. 2000). As to the "innocent owner" defense, the court held that claimant could not prevail because, although entirely unaware of the illegal activities when they were occurring, she nonetheless knew of the property's tainted character before obtaining an ownership interest in it following her husband's death. Id. at 189. The district court rejected all of claimant's arguments that, as a spouse and/or heir, she had a protectable state law ownership interest for purposes of the innocent owner defense to federal forfeiture. Id. at 186-89. As to claimant's Eighth Amendment argument, the district court concluded that the fine was not excessive because the harshness of the forfeiture, although significant, was outweighed by, inter alia, the seriousness of her husband's offense, the lengthy sentence and fine he could

-8-

have received, and the close relationship between the property and the offense. Id. at 191-92.

On appeal, this court originally held that claimant had a protectable interest in at least one-third of the home under the dower provisions in Massachusetts law, see 221 Dana Ave., 239 F.3d at 88,[3] and that forfeiture, on these facts, would not serve any congressional purpose behind the statute, see id. at 89. Accordingly, the court vacated the district court's decision and directed dismissal of the government's forfeiture case.

The government filed a petition for rehearing, which this court granted. The government argued that claimant's dower interest did not constitute a protectable ownership interest for purposes of the innocent owner defense and, even assuming it did, there was still no basis for precluding forfeiture of the remaining two-thirds interest. The court again concludes that the district court erred in rejecting claimant's innocent owner

---

[3] Massachusetts law provides that a surviving spouse may elect to receive a life estate in one-third of all real property owned by the deceased spouse at the time of death. See Mass. Gen. Laws ch. 189, § 1; see also Opinion of the Justices, 151 N.E.2d 475 (Mass. 1958).

defense. We now base our decision solely on the language of and policies behind the former federal civil forfeiture statute, and do not reach the state dower interest issue.

## II.

We review de novo the grant of a Fed. R. Civ. P. 50(a) motion for judgment as a matter of law, using the same standards as the district court. E.g., Russo v. Baxter Healthcare Corp., 140 F.3d 6, 8 (1st Cir. 1998). The evidence and inferences drawn from the evidence are considered in the light most favorable to the non-moving party (here, the claimant), drawing all reasonable inferences in that party's favor. Id.; Collazo-Santiago v. Toyota Motor Corp., 149 F.3d 23, 26 (1st Cir. 1998).

## III.

In 1970, Congress enacted the Comprehensive Drug Abuse Prevention and Control Act to authorize the forfeiture of illegal drugs as well as the instruments by which they were manufactured and distributed. Pub. L. No. 91-513, § 511(a), 84 Stat. 1236, 1276. In 1978, Congress amended the Act. It expanded government power to forfeit by authorizing forfeiture of the proceeds of illegal drug sales. It contracted government power by recognizing an innocent owner defense both as to the property used and as to the proceeds. See United States v. 92 Buena Vista Ave., 507 U.S. 111, 121-23 & n.17.

(1993).  In 1984, Congress further expanded civil forfeiture to reach all real property used in violation of the statute, and added an innocent owner defense to cover these situations.  Pub. L. No. 98-473, 98 Stat. 1837, 2050 (1984).  There was little definitional help in the civil forfeiture statute as to who was an innocent owner, and the courts offered varied definitions.  This definitional void has been largely filled by the enactment of the Civil Asset Forfeiture Reform Act of 2000.  Pub. L. No. 106-185, § 21, 114 Stat. 202, 202-10, 18 U.S.C. § 983.  Our case, however, involves that void and the specific issue of how to treat the innocent owner defense in the context of a post-illegal act transfer, assuming (in the government's favor), that such transfer is involved here.

The government has approached this case as though the outcome of forfeiture of post-illegal act transferred property turns simply on when the transferee obtained knowledge of the crime.  This leads to opposite results in two different situations: where the post-illegal act transferee acquires an ownership interest in the property used for the crime prior to obtaining knowledge of the offense, the government says, the transferee is an innocent owner, but where the post-illegal act transferee's ownership interest is acquired after knowledge of the offense, the property is subject to forfeiture.  For the government, the only relevant dividing line is when the knowledge is obtained.

Although a transferee, here a spouse, may be equally blameless and unable to prevent the property from being used for crime in both situations, according to the government, the spouse who has property conveyed to her the day before she learns of the crime is protected from forfeiture but the spouse who has property conveyed to her the day after she learns of the crime loses her home. And so, the government says, if one accepts that Mrs. Gass had no ownership interest until after she learned of her husband's crime, this is an easy case and her home is forfeit. For purposes of this analysis, we will assume arguendo that Mrs. Gass is a post-illegal act transferee.

The underlying analytical difficulty in this case is that the version of the forfeiture statute that applies here was drafted to solve a different problem than the one before us. Congress drafted the forfeiture statute -- and the associated innocent owner provision -- without apparent thought about many of the permutations relating to changes in ownership after the commission of an illegal act. Its main concern in the innocent owner situation was to protect those whose then-currently owned property was used in a drug transaction without the owner's knowledge. The pertinent language is as follows:

> All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more

> than one year's imprisonment, except that no
> property shall be forfeited under this paragraph,
> to the extent of an interest of an owner, by
> reason of any act or omission established by that
> owner to have been committed or omitted without
> the knowledge or consent of that owner.

21 U.S.C.A. § 881(a)(7) (1999) (amended 2000).[4]

The legislative history suggests that Congress had little reason to even consider the issue of an innocent owner in post-illegal act transfers when enacting section 881(a)(7). See S. Rep. No. 225, 98th Cong. 196 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3379, 3398. This is so because prior to the Supreme Court's decision in United States v. 92 Buena Vista Avenue, 507 U.S. 111 (1993), it was generally believed that title to forfeited property vested in the United States at the time of the illegal act. See, e.g., Eggleston v. Colorado, 873 F.2d 242, 248 (10th Cir. 1989), cert. denied, 493 U.S. 1070 (1990). So before 92 Buena Vista Avenue, no one who received the property after the commission of the illegal act could have asserted an innocent owner defense because the property would have been forfeited as of the date that act was committed. It might then be easy to say Congress did not intend to protect any after-acquired interest. But that conclusion is inconsistent with how the Supreme Court has approached the statute. In

---

[4] The Civil Asset Forfeiture Reform Act of 2000 eliminated the former innocent owner defense from the drug forfeiture provisions contained at 21 U.S.C. § 881(a)(4)(6), and (7), and created a new, general innocent owner defense to federal civil forfeiture proceedings. See Pub. L. No. 106-185, § 21, 114 Stat. 202, 202-10.

92 Buena Vista Avenue, the Court held that, for purposes of the relation back doctrine, the government does not become the owner of property before forfeiture has been decreed, and someone who acquires an ownership interest after the illegal acts have occurred may therefore still assert the innocent owner defense. 507 U.S. at 123-29.

Thus, ignoring for a moment later caselaw, the statute's original aim seemingly was to address situations where property is, at the time of the criminal activity, already owned in whole or part by another, the "innocent" party (for example, a wife who is a tenant by the entirety with a drug-dealing husband). Congress wanted to protect such an innocent owner of real property "to the extent of that owner's interest"[5] if, unbeknownst to that owner, a co-owner (or non-owner) used the same real property in the course of committing a crime. In this context, it makes sense, in deciding whether the innocent owner exception should apply, to inquire whether the soi-disant innocent owner knew of the drug dealer's criminal activity at the time the crime occurred.

But cases in which the "innocent" party only later gains an ownership interest pose a very different set of problems. Moreover, these problems may have different possible solutions depending on the

_____

[5]    Congress has instructed us that "[t]he term 'owner' should be broadly interpreted to include any person with a recognizable legal or equitable interest in the property seized." Joint Explanatory Statement of Titles II and III, Pub. L. No. 95-633, 95th Cong. 2d Sess. (Oct. 7, 1978), reprinted in 1978 U.S.C.C.A.N. 9496, 9518, 9522.

-14-

kind of transfer that resulted in the change of ownership. In turn, numerous policy arguments can be brought to bear on either side of each of these difficult questions. Thus we are left to construct imperfect solutions to an imperfect statute.

One approach would be to draw a distinction, as with negotiable instruments, between good faith purchasers for value and gratuitous transferees. In addition, it would be a practical and straightforward method of determining whether a subsequent owner had a protected interest in property: a gratuitous transferee would have no protection against a pre-transfer crime for which forfeiture was appropriate and a bona fide purchaser for value would not face forfeiture as long as she had made the purchase in good faith. Congress adopted this approach in part in the new statute enacted after our case. See 18 U.S.C. § 983(d)(3)(A)(i).

A second approach -- and the one which the government urges us to adopt -- would be to rely solely on the timing of the new owner's knowledge of the illegal act. Consonantly, several circuits have precluded an innocent owner defense when the transferee has knowledge of the prior owner's illegal acts at the time of the transfer. E.g., United States v. 6640 SW 48th St., 41 F.3d 1448, 1452 (11th Cir. 1995); United States v. 10936 Oak Run Circle, 9 F.3d 74, 76 (9th Cir. 1993). One circuit has disagreed, concluding that a person may assert an innocent owner defense if she was innocent at the time the acts were

-15-

committed, regardless whether she knew about the acts at the time of the transfer.  See United States v. One 1973 Rolls Royce, 43 F.3d 794, 800 (3rd Cir. 1994).  We note that the government's argument in this case provides no protection for a good faith purchaser for value where the purchaser has knowledge of the property being used for the crime.

Although the government's interpretation finds no support in section 881's language, it has been adopted by courts to avoid undermining deterrence.  6640 SW 48th St., 41 F.3d at 1452-53. However, to say that a transferee is an innocent owner if she learns of the crime immediately after the transfer but is not if she learns of the crime immediately before is, from a deterrence perspective, irrational.[6]  The timing of the transferee's knowledge simply does not affect significantly the degree to which forfeiture acts as a deterrent to the crimes themselves.  Indeed, on the government's view of the statute, Mrs. Gass would be an innocent owner if her husband had simply transferred the property to her prior to his arrest even though his doing so would have had no deterrent effect on his actual crimes.

The government says that rejecting its position and allowing Mrs. Gass to retain the property will greatly undermine the deterrent

---

[6]     Moreover, the legislative history to the recent Civil Asset Forfeiture Reform Act expressly cites the suicide of the wrongdoer as an example of where the deterrent interest would not be served.  See H.R. Rep. No. 106-192, 1999 WL 406892, at *16 (June 18, 1999) ("It is hardly likely that many criminals will commit suicide for the express purpose of foiling imminent seizures by having their property devolved to their heirs.").

-16-

effect of forfeiture.  But <u>any</u> position that permits a post-illegal act

transferee (even a good faith purchaser) to retain property will, to

some degree, undermine deterrence.  In this sense, the question is <u>not</u>

whether permitting some post-illegal act transfers will reduce

deterrence: it will to some extent, at least in theory.  Rather, the

question is how deterrence will be affected by permitting the innocent

owner defense in the case of a transferee who learns of the crime

immediately <u>after</u> the transfer, but prohibiting the defense when the

transferee learns of the crime immediately <u>before</u> the transfer.  There

remains no principled reason why the timing of the transferee's

knowledge should matter.  Under the government's reading of the

forfeiture statute, even a bona fide purchaser who knew nothing about

the crimes when they occurred would not be an innocent owner if she

knew the property had been used in connection with drug crimes when she

acquired it.  Indeed, such a rule would give defendants an incentive to

engage in property transfers of instrumentalities to innocent parties

before they are caught to evade the serious risk of forfeiture.

    The government also points to the section of the old

forfeiture statute authorizing forfeiture of "all proceeds traceable"

to an illegal drug transaction.  21 U.S.C.A. § 881(a)(6) (amended

2000).  The proceeds provision contains an identical innocent owner

defense to that contained in the section authorizing forfeiture of real

property used as an instrumentality in an illegal drug transaction, <u>see</u>

-17-

id. § 881(a)(7), the section at issue in this case.  The government argues that because Congress would never have allowed a post-illegal act transfer of proceeds under section 881(a)(6) in light of its impact on deterrence, and because like provisions in like statutes are to be interpreted in like manner, Congress therefore never meant to allow post-illegal act transfers of real property under section 881(a)(7).

This argument adds nothing to the problem that concerns us: whether Congress had any intention one way or the other as to how an innocent owner defense would work with respect to post-illegal act transfers at all, and how to factor in 92 Buena Vista Avenue.  Further, we are concerned here not with proceeds but with property used in furtherance of the crime, and that undercuts the government's position.  There are reasons to treat such property differently than mere proceeds.  As to such property, there may be an opportunity for a current owner to prevent its use for criminal activity,[7] unlike the situation of proceeds.  It thus makes more sense to assess innocence in light of whether there was an opportunity, untaken, to prevent the use of such property for a crime.

---

[7]     Indeed, the new forfeiture statute explicitly recognizes this possibility by distinguishing between present owners and post-illegal act transferees, and making available the innocent owner defense to a present owner who, "upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property."  18 U.S.C. § 983(d)(2)(A).

-18-

If we were writing on a blank state, arguably the best judicial gloss would reject an innocent owner defense for a post-illegal act gratuitous transferee (which the government claims is Mrs. Gass' status[8]). But, given that such a position only garnered three votes in 92 Buena Vista Avenue, 507 U.S. at 139-40 (Kennedy, J., dissenting), this is not an option. An alternative -- which is permissible under 92 Buena Vista Avenue -- is to adopt the most literal reading of section 881: testing the later owner's innocence at the time of the original owner's illegal acts. On this reading, which is the reading we adopt here, Mrs. Gass is an innocent owner because she did not have knowledge of, or consent to, Mr. Gass' criminal activity at the time the activity occurred.[9]

Admittedly, such a reading probably does not reflect congressional intent one way or the other because seemingly Congress had no intent at the time as to how courts should solve the problem we

---

[8]    Whether an innocent spouse who is bequeathed the marital home by will from the other spouse is a "gratuitous transferee" is itself questionable.

[9]    Cf. 92 Buena Vista Ave., 507 U.S. at 139 (Scalia, J., concurring) (suggesting that it would not be absurd to think that post-illegal act transferees who knew about the illegal act creating the taint at the time of transfer, but not at the time the act occurred, were beyond the reach of the forfeiture statute); One 1973 Rolls Royce, 43 F.3d at 819 ("[I]f [claimant] can show that he did not know that the [property] was being used or going to be used [in connection with the illegal transactions] at the time they took place, then he will be able to show that he did not consent to the use and . . . will be entitled to the innocent owner defense.").

now face;[10] but fidelity to literal language is still worth something. True, such an approach may marginally reduce the deterrent effect of the forfeiture statute. However, the government's position does much the same thing, and it includes an entirely arbitrary cutoff point -- namely, the transferee's knowledge of the criminal acts. In any event, the new statute does address Mrs. Gass' problem with a tailor-made test of its own, so how we solve the problem before us has little implication for the future. See Civil Asset Forfeiture Reform Act of 2000, Pub. L. No. 106-185, 114 Stat. 202, 18 U.S.C. § 983 (U.S.C.A. Supp. 2000).

We are also mindful of the well established rule that federal forfeiture statutes must be narrowly construed because of their potentially draconian effect. See, e.g., 92 Buena Vista Ave., 507 U.S. at 122-23; United States v. One 1980 Red Ferrari, 875 F.2d 186, 188 (8th Cir. 1989); see also United States v. One 1936 Model Ford V-8 DeLuxe Coach, 307 U.S. 219, 226 (1939); United States v. $191,910.00 in U.S. Currency, 16 F.3d 1051, 1068 (9th Cir. 1994); United States v. One 1976 Mercedes Benz 280S, 618 F.2d 453, 454 (7th Cir. 1980). Indeed,

_____

[10] We note, however, that Congress' decision to add, inter alia, section 881(a)(7) to the forfeiture scheme signaled "a dramatic expansion of the government's forfeiture power" by giving the government authority to seize property that by all appearances was legitimate, and not merely the illegal substances themselves and the instruments by which they were manufactured and distributed. One 1973 Rolls Royce, 43 F.3d at 799.

the possibility of interpreting the forfeiture statute to promote some ideal of absolute deterrence, regardless of the harshness of individual outcomes, has been foreclosed by 92 Buena Vista Avenue. See 507 U.S. at 124 ("Because neither the money nor the house could have constituted forfeitable proceeds until after an illegal transaction occurred, the Government's submission would effectively eliminate the innocent owner defense in almost every imaginable case in which the proceeds could be forfeited. It seems unlikely that Congress would create a meaningless defense.").

The new civil forfeiture statute likewise does not show that Congress had any such intent of enacting a principle of absolute deterrence at least with respect to those who acquired their interest after the conduct giving rise to the forfeiture has taken place. Rather, the new statute provides an innocent owner defense for bona fide purchasers or sellers for value, id. § 983(d)(3)(A), and for spouses and legal dependents who use the property as a primary residence and rely on it as a basis for shelter in the community, id. § 983(d)(3)(B).

Finally, we leave open the likelihood under the old statute, as the plurality opinion in 92 Buena Vista Avenue did, that in some circumstances equitable principles may preclude an innocent owner defense. 92 Buena Vista Ave., 507 U.S. at 129-30; see also 10936 Oak Run Circle, 9 F.3d at 76; cf. Bennis v. Michigan, 516 U.S. 442, 457

-21-

(1996)(Ginsburg, J., concurring). For example, if the government produced convincing evidence that the post-illegal act transferee conspired with the other owner to avoid the forfeiture of property, then a court might refuse to permit the innocent owner defense. Although this possibility should be noted for future cases, here the government has not argued that any such evidence exists.[11]

## IV.

The court vacates the judgment of the district court and directs dismissal of the government's forfeiture action with prejudice.[12]

<u>So ordered</u>.

---

[11]     In its petition for rehearing, the government requested that this court take judicial notice of factual information, never presented to the district court, which allegedly shows substantial assets other than the home at 221 Dana Avenue left to Mrs. Gass by her husband. Claimant has moved to strike the evidence, and, inter alia, contests its accuracy. We treat the motion as moot, in light of the grounds for our decision.

[12]     Because we decide the case under the former forfeiture statute, we do not reach claimant's constitutional arguments.