*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0248P (6th Cir.)
File Name: 03a0248p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

JAMES HALL,
    *Plaintiff-Appellant/*
    *Cross-Appellee,*

    *v.*

CONSOLIDATED
FREIGHTWAYS CORPORATION
OF DELAWARE,
    *Defendant-Appellee/*
    *Cross-Appellant.*

Nos. 00-4316/4431

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 98-02554—Dan A. Polster, District Judge.

Argued: June 14, 2002

Decided and Filed: July 25, 2003

Before: DAUGHTREY and CLAY, Circuit Judges;
WILLIAMS, Senior District Judge.[*]

———————————

[*] The Honorable Glen M. Williams, Senior United States District Judge for the Western District of Virginia, sitting by designation.

———————————

## COUNSEL

**ARGUED:** Edward L. Gilbert, SLATER, ZURZ & GILBERT, Akron, Ohio, for Appellant. Todd H. Lebowitz, BAKER & HOSTETLER, Cleveland, Ohio, for Appellee. **ON BRIEF:** Edward L. Gilbert, SLATER, ZURZ & GILBERT, Akron, Ohio, for Appellant. Todd H. Lebowitz, Jose C. Feliciano, Sr., BAKER & HOSTETLER, Cleveland, Ohio, for Appellee.

   CLAY, J., delivered the opinion of the court, in which WILLIAMS, D. J., joined. DAUGHTREY, J. (p. 20), delivered a separate concurring opinion.

———————————

## OPINION

———————————

   CLAY, Circuit Judge. In Case No. 00-4316, Plaintiff-Appellant/Cross-Appellee, James Hall, appeals from the district court's order granting in part the motion brought by Defendant-Appellee/Cross-Appellant, Consolidated Freightways Corporation of Delaware, under Federal Rule of Civil Procedure 50 for partial judgment as a matter of law or, in the alternative, to alter judgment, grant remittitur, or grant a new trial, following the jury verdict awarding Plaintiff $50,000 in compensatory damages and $750,000 in punitive damages in this case alleging race discrimination, wrongful termination, hostile work environment, and retaliation under state and federal law. Specifically, Plaintiff challenges the district court's order granting Defendant's Rule 50 motion as it relates to reducing Plaintiff's jury award from a total of $800,000 to $302,400 in order to comply with the federal statutory cap.

In Case No. 00-4431, Defendant cross appeals from the district court's order denying its Rule 50 motion as it relates to Plaintiff receiving punitive damages in any amount. Specifically, Defendant maintains that the evidence in this case did not support an award of punitive damages under federal or state law.

For the reasons set forth below, in Case No. 00-4316, we **REVERSE** the district court's order remitting Plaintiff's jury award on punitive damages and **REMAND** with instructions for the court to reinstate the full jury award; in Case No. 00-4431, we **AFFIRM** the district court's order denying Defendant's Rule 50 motion for judgment as a matter of law regarding the award of punitive damages to Plaintiff.

### STATEMENT OF FACTS

### Procedural History

Plaintiff, a truck driver employed by Defendant since 1984, filed suit against Defendant on November 6, 1998, alleging race discrimination, racially hostile work environment, wrongful termination based on race, and retaliation in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000(e) *et seq.*, and in violation of Ohio Revised Code § 4112 *et seq.* The case was tried before a jury beginning on May 9, 2000. Ten days later, on May 19, 2000, the jury returned a verdict in favor of Plaintiff on all counts, and awarded Plaintiff $50,000 in compensatory damages and $750,000 in punitive damages.

Defendant filed a Rule 50 motion for partial judgment as a matter of law or, in the alternative, to alter judgment, grant remittitur, or grant a new trial. The district court granted Defendant's motion in part, by remitting the award of punitive damages to the federal statutory cap ($750,000 to $252,400). Plaintiff then filed this timely appeal, challenging the district court's order remitting the award of punitive

damages. Defendant filed this timely cross-appeal challenging the district court's order denying partial judgment as a matter of law with respect to the award of punitive damages to Plaintiff in any amount.

### Facts

Plaintiff began his employment as a truck driver at Defendant's facility located in Richfield, Ohio, in February of 1984. Plaintiff had an excellent work record, having missed only one day of employment in approximately fifteen years of service. Plaintiff claimed, however, that during the course of his employment, he had to endure numerous incidents of racist graffiti on company property, and numerous incidents of racial slurs such as having his supervisors profess to Plaintiff that he was a problem because of his race—African American. In addition, Plaintiff claimed that he was demeaned and harassed by co-workers without objection from supervisors.

After several years of enduring these racial attacks, Plaintiff filed a complaint with the Ohio Civil Rights Commission and the Equal Employment Opportunity Commission ("EEOC") on December 27, 1996. Thereafter, according to Plaintiff, the incidences of racial harassment increased. For example a Klu Klux Klan symbol and membership card solicitation were placed on Plaintiff's locker. This escalated racial harassment led Plaintiff to file a second complaint of discrimination and retaliation on August 8, 1997.

About three months later, on November 7, 1997, Plaintiff was abruptly and inappropriately terminated for what Plaintiff characterized as minor and false reasons. Plaintiff claimed that the termination was actually in retaliation for his filing of the discrimination complaints, and because of his race. Plaintiff filed a third complaint of racial discrimination, and the Ohio Civil Rights Commission found probable cause to sue. In the meantime, through the union contract, it was ruled

that Plaintiff's termination was improper and he was ordered reinstated to his job. Plaintiff was issued his right to sue letter on September 22, 1998, and this case ensued.

## DISCUSSION

### Case No. 00-4431 – Cross-Appeal by Defendant[1]

This Court reviews *de novo* a district court's decision to grant judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure. *See Monday v. Ouellette*, 118 F.3d 1099, 1101-102 (6th Cir. 1997). In reviewing the decision, we must consider the evidence in the light most favorable to the nonmovant, giving that party the benefit of all reasonable inferences. *See Tuck v. HCA Health Servs. of Tenn.,* 7 F.3d 465, 469 (6th Cir. 1993). Accordingly, when faced with a Rule 50(a) motion, a district court may not weigh the evidence or make credibility determinations, as these are jury functions. *See Lytle v. Household Mfg., Inc.,* 494 U.S. 545, 554-55 (1990). A dismissal pursuant to Rule 50(a) is improper where the nonmovant presented sufficient evidence to raise a material issue of fact for the jury. *See Sawchik v. E.I. du Pont de Nemours & Co.,* 783 F.2d 635, 636 (6th Cir. 1986) (citing *O'Neill v. Kiledjian,* 511 F.2d 511, 513 (6th Cir. 1975)). In other words, the decision to grant judgment as a matter of law or to take the case away from the jury is appropriate "whenever there is a complete absence of pleading or proof on an issue material to the cause of action or when no disputed issues of fact exist such that reasonable minds would not differ." *Id.* Judgment as a matter of law pursuant to Rule 50(a) is appropriate only where "a party has been fully heard with respect to an issue and there is no legally sufficient

---

[1]We shall address Defendant's cross-appeal first inasmuch as resolution of the cross-appeal affects Plaintiff's appeal.

evidentiary basis for a reasonable jury to have found for that party with respect to that issue." Fed. R. Civ. P. 50(a)(1).

For plaintiffs who did not obtain compensatory or punitive damages under 42 U.S.C. § 1981, but prevailed in a Title VII case other than one relying on a disparate impact theory of discrimination, § 1981a permits but limits such awards. *See* 42 U.S.C. §§ 1981(a)(1), 1981a(b)(3)(D) (capping compensatory and punitive damages, exclusive of any backpay award, at $300,000 for those defendants employing more than 500 employees). In adopting this provision, "Congress sought to expand the available remedies by permitting the recovery of compensatory and punitive damages in addition to previously available remedies, such as front pay." *Pollard v. E.I. du Pont de Nemours & Co.,* 532 U.S. 843, 854 (2001). To recover punitive damages under the statute, a plaintiff must demonstrate that his employer engaged in a discriminatory practice "'with malice or with reckless indifference to the [plaintiff's] federally protected rights.'" *Kolstad v. Am. Dental Ass'n,* 527 U.S. 526, 535 (1999) (quoting 42 U.S.C. § 1981a(b)(1) and resolving circuit spilt by rejecting the argument that a defendant's conduct must be egregious to support an award of punitive damages). "Malice" and "reckless indifference" under the statute refer to "the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." *Id.* at 535. That is, "in the context of § 1981a, an employer must at least discriminate in the face of a perceived risk that its actions will violate federal law to be liable in punitive damages." *Id.* at 536.

In considering Defendant's Rule 50 motion with respect to the jury's award of punitive damages, the district court recognized that the Supreme Court's decision in *Kolstad v. American Dental Ass'n*, 527 U.S. 526 (1999) was controlling, inasmuch as in *Kolstad* the Supreme Court clarified that standards to be applied when determining the appropriateness of punitive damages in a Title VII case. Specifically, the

district court recognized that under *Kolstad*, "malice or reckless disregard for federally protected rights is sufficient to support a punitive damages award." (J.A. at 72.) In light of this, the district court opined:

> The jury for this case was not a "runaway" jury in any sense of the word. It was an *all white* jury that heard the evidence as it was presented to them by *both* sides. There were numerous instances throughout the trial where the two parties to a conversation or meeting testified in a diametrically opposing fashion and the testimony could not be reconciled. The jurors had to conclude that one witness or the other was not telling the truth. They weighed the credibility of the witnesses and found Plaintiff and his witnesses to be more credible than Defendant's witnesses. *That is their role.*
>
> As an aside, the Court notes that had Consolidated Freightways been as aggressive in responding to graffiti, flyers, and persistent offensive slurs as it was to allegations that an African American supervisor, Ricky Peterson, had engaged in verbal sexual harassment of a subordinate, the unlawful conduct would have been eliminated. The jury concluded that Plaintiff was subjected to years of discriminatory treatment and hostility, and that the company did not take meaningful action. These are things that should have and could have been corrected, but weren't. While the jury could have concluded that the company was merely negligent, there was evidence from which the jury could have found "reckless indifference." Therefore, the punitive damage award is *not* unreasonable. For all of these reasons, Defendant's request to vacate the jury's award is **DENIED**.

(J.A. at 73 (emphasis in original).)

Defendant goes on at length in the statement of facts section of its brief regarding its alleged "good faith" measures to comply with Title VII. That is, Defendant claims that it is "undisputed" that it made extensive efforts to comply with Title VII by having and posting a comprehensive zero-tolerance racial harassment policy since 1994, by holding meetings to educate the staff about the policy, and by enforcing the policy. In response, Plaintiff claims that the facts are very much in dispute, and cites trial testimony from various witnesses refuting Defendant's claims. For example, in refuting Defendant's statement that it "takes the additional affirmative step of holding anti-discrimination meetings every year to ensure that every employee and every manager was familiar with the [anti-discrimination/anti-harassment] policy," (Defendant's Brief at 10), Plaintiff states that "as the historical testimony of Rick Peterson, the company's [Defendant's] highest ranking black employee, helped to establish, the existence of such meetings has long been in dispute." (Plaintiff's Final Reply Brief at 4.) Plaintiff adds that Peterson's testimony was buttressed by the trial testimony of several other witnesses who claimed that they were never at any such meetings. (Plaintiff's Final Reply Brief at 6-7, citing trial testimony of African American as well as Caucasian employees such as Willie Askew, James Adams, William Barrow, Ed Clay, Clarence Chapman, and Frederick Armstrong).

Similarly, with respect to Defendant's claim that it posted the anti-discrimination policy throughout the facility and made the policy widely available to employees, (Defendant's Brief at 9), Plaintiff states that the policy was not posted anywhere that any worker would notice, and that few workers in fact did notice. (Plaintiff's Final Reply Brief at 3.) In support of Plaintiff's contention, he relies upon the testimony of Peterson who testified that he never saw the policy posted until December of 1997. Likewise, regarding Defendant's contention that it made good faith efforts to enforce the policy, Plaintiff notes that the two individuals Defendant cites

as being disciplined for violating the policy were not disciplined until 1998, several years before circumstances existed to enforce the policy (i.e., grounds existed to enforce the policy's disciplinary measures since 1994). Plaintiff also makes note of the fact that when sexual harassment was alleged by an employee, Defendant offered a $1,000 reward for information because "rewards" in the trucking industry "always got results;" indeed, the sexual harassment came to a stop. However, when the issue was racial harassment, no such reward incentives were offered, and the racial harassment did not stop; rather, it escalated. (Plaintiff's Final Reply Brief at 7-9 relying upon testimony of Peterson and Madigan).

The above-referenced testimony indicates that the district court was correct in asserting that the decision to award punitive damages came down to the credibility of witnesses. Inasmuch as neither the district court nor this Court is permitted to make credibility determinations or to weigh the evidence on a Rule 50 motion, the jury's decision to credit the testimony of Plaintiff's witnesses over that of Defendant's witnesses cannot be disturbed. *See Lytle*, 494 U.S. at 554-55. Moreover, this testimony also indicates that Plaintiff met his burden of proving that punitive damages were appropriate. As *Kolstad* establishes, "malice" and "reckless indifference" under the statute refer to "the employer's knowledge that it may be acting in violation of federal law . . . ." *Kolstad*, 527 U.S. at 535. Defendant argues that its actions cannot be found to be in knowing violation of federal law because of its good faith efforts to comply with Title VII, such as having a policy, posting the policy, having meetings regarding the policy, and enforcing the policy. Defendant is correct in its assertion that, under *Kolstad*, "in the punitive damages context, an employer may not be vicariously liable for the discriminatory employment decision of managerial agents where those decisions are contrary to the employer's 'good faith efforts to comply with Title VII.'" *See id.* at 545.

However, the record does not support Defendant's assertion in this case.

As illustrated, the record is replete with testimony refuting Defendant's alleged "good faith" efforts. The Seventh Circuit has found that in determining whether punitive damages were properly awarded in the wake of *Kolstad*, the plaintiff must first demonstrate that the employer acted with the requisite mental state.[2] *See Bruso v. United Airlines, Inc.*, 239 F.3d 848, 857 (7th Cir. 2001). The *Bruso* court found that a plaintiff may demonstrate the requisite mental state by showing that "the relevant individuals knew of or were familiar with the antidiscrimination laws and the employer's practices for implementing those laws." *Id.* Alternatively, the *Bruso* court opined, a plaintiff may demonstrate that the employer acted with the requisite mental state (reckless disregard for the plaintiff's federally protected rights) by showing the defendant's employees lied, either to the plaintiff or to the jury, in order to cover up their discriminatory actions. *Id.* at 858 (citing *Passantino v. Johnson & Johnson*

---

[2] The Seventh Circuit established a formal three-part test in the wake of *Kolstad* for determining whether punitive damages were appropriate: the first step requires the plaintiff to show that the employer acted with the requisite mental state; once the plaintiff has met this burden, then the second step requires a showing by the plaintiff that the employees who discriminated against him were managerial agents; and finally, if the showing is made, then the employer may avoid liability by showing that it engaged in good faith efforts to implement an antidiscrimination policy. *See Bruso v. United Airlines, Inc.*, 239 F.3d 848, 857-58 (7th Cir. 2001). Although it appears that this Court has not *per se* adopted the express three-step process as announced by the Seventh Circuit, the Court has in effect somewhat followed the process in light of *Kolstad*. *See EEOC v. Harbert-Yeargin, Inc.*, 266 F.3d 498, 512-14 (6th Cir. 2001) (discussing the requisite showing of malice/ reckless indifference, but not addressing the good faith defense); *see also Jeffries v. Wal-Mart Stores, Inc.*, No. 99-4150, 2001 WL 845486 (6th Cir. July 20, 2001) (unpublished) (same); *EEOC v. EMC Corp. of Mass.*, No. 98-1517, 2000 WL 191819 (6th Cir. Feb. 8, 2000) (unpublished) (same).

*Consumer Prods., Inc.*, 212 F.3d 493, 516 (9th Cir. 2000)). In the matter at hand, the diametrically opposed testimony from Defendant's employee witnesses versus that of Plaintiff's employee witnesses provides support for the conclusion that Defendant's employees were not truthful in their actions, such that it may be said that Plaintiff demonstrated that Defendant acted with reckless disregard for his federal rights. *See id.*

In addition, the *Bruso* court found that for any employer to show that it engaged in good faith efforts so as to avoid liability for punitive damages, it is not enough that the employer have a written or formal anti-discrimination policy. *See* 239 F.3d at 858. Rather, the employer must demonstrate that it engaged in good faith efforts to *implement* the policy. *See id.* (emphasis added). "Otherwise, employers would have an incentive to adopt formal policies in order to escape liability for punitive damages, but they would have no incentive to enforce those policies." *Id.; see also Cadena v. Pacesetter Corp.*, 224 F.3d 1203, 1210 (10th Cir. 2000); *Passantino*, 212 F.3d at 517. In this case, Defendant cannot succeed in showing that it implemented its policy in good faith where it did not enforce the policy until 1998, despite numerous incidents of racial animus in the prior four years, and where Defendant did not implement the policy with the same force as to race that it did as to sex.

We therefore conclude that the district court did not err in denying Defendant's Rule 50 motion as to the award of punitive damages.

**Case No. 00-4316 – Appeal by Plaintiff**

A district court's construction of the damage caps in § 1981a is a question of statutory construction and is therefore reviewed *de novo. See Hudson v. Reno*, 130 F.3d 1193, 1198 (6th Cir. 1997), *abrogated on other grounds*, *Pollard v. E.I. de Pont de Nemours & Co.*, 532 U.S. 843 (2001); *see also*

*United States v. Spinelle*, 41 F.3d 1056, 1057 (6th Cir. 1994); *United States v. Brown*, 915 F.2d 219, 223 (6th Cir. 1990).

In ruling that the statutory cap applied to the jury's award of damages in this case, the district court opined:

Defendant's final contention with respect to the compensatory and punitive damage award is that it must be reduced to conform to the $300,000 statutory cap for noneconomic damages under Title VII. Section 1981a caps an employer's exposure to compensatory and punitive damages along a sliding scale that varies with the employer's size. . . .

Pursuant to the statute, Defendant calculates that Plaintiff's compensatory damages were limited to three weeks of missed work and emotional distress. Because the Plaintiff earned approximately $20 per hour, three weeks of lost pay would total approximately $2,400 ($20 per hour x 5 days per week x 3 weeks). The remaining $47,600 of his $50,000 compensatory award is therefore attributable to emotional distress and is subject to the $300,000 cap. Thus, in accordance with 42 U.S.C. § 1981a(b)(3), the punitive damages award must not exceed $252,400, which is $300,000 less $47,600 in emotional distress damages.

Plaintiff argues against the application of the federal cap because his claims were tried under both Title VII and Chapter 4112 of the Ohio Revised Code, and contends damages in excess of the federal cap *could be* properly awarded. Citing *Laderach v. U-Haul*, 207 F.3d 825, 828 (6th Cir. 2000), Plaintiff maintains that the "title" of an instruction is irrelevant. He argues that whether the Court "titled" the jury instructions under Title VII or under Ohio law is of no consequence, since state and federal employment discrimination claims

parallel one another. "If the proof is sufficient to find one, it is sufficient to find the other also."

Plaintiff further argues that the Court's punitive damage instruction, *while applying the federal standards*, was sufficient to award punitive damages under *state* standards. However, to so construe Plaintiff's argument would be to render the federal cap on damages meaningless. The Court finds that the statutory cap of $300,000 is applicable here.

As a final argument, Plaintiff asserts that the Ohio Supreme Court held in *Rice v. CertainTeed Corp.*, 84 Ohio St. 3d 417 (Ohio 1999), that punitive damages are unlimited when federal and state claims are tried together. However, as Defendant points out, the sole issue before the Ohio Supreme Court in *Rice* was whether punitive damages could be assessed at all under Ohio law. Furthermore, *Rice* also restated the Ohio law requirement that "[i]n Ohio, punitive damages are awarded only upon a finding of actual malice." *Rice*, 84 Ohio St. 3d at 422.

Here the jury was instructed, under the federal standard, that punitive damages could be awarded if they found that Defendant "had engaged in a discriminatory and/or retaliatory practice or practices with *malice or reckless indifference* to the rights of Plaintiff James Hall to be free from such intentional discrimination and/or retaliation in employment." (Court's Jury Instruction at 15) (emphasis provided). The fact that the jury concluded that there was malice or recklessness in the Defendant's conduct does not necessarily mean that it concluded that there was *actual* malice – as would be required by Ohio law. Because we do not have an affirmative finding on malice, the Ohio standard is not satisfied.

Accordingly, because the jury was instructed under federal law and under federal standards, the federal cap must be applied. Defendant's motion to alter judgment and grant remittitur is **GRANTED**. Pursuant to 42 U.S.C. § 1981a, the punitive damage award is hereby reduced to the statutory maximum of $300,000 plus, the amount of the backpay award ($2,400). Judgment for Plaintiff is amended to reflect a damage award of $302,400. Defendant's Rule 50 motion for judgment as a matter of law is **DENIED** in all other respects.

(J.A. at 74-76 (emphasis in original).)

On appeal, Plaintiff argues that the district court erred in capping his damages under § 1981a. Plaintiff notes that under federal law, punitive damages are permitted if the jury finds that a defendant acted with "malice" or "reckless indifference to the rights of others;" while under state law, punitive damages are permitted if the jury finds that a defendant acted with "actual malice." Plaintiff argues, however, that despite the difference between the federal and state standards, the jury made a finding of actual malice in this case sufficient to satisfy Ohio's statute. Plaintiff makes two arguments in support of his position. First, Plaintiff contends that the jury's finding of retaliation satisfied Ohio's actual malice standard; and second, in the alternative, Plaintiff contends that "[e]ven if the jury awarded punitive damages based on a finding of reckless indifference, the 'conscious indifference' to rights required to find reckless indifference satisfies the 'conscious disregard' for rights standard required to find actual malice under Ohio State law." (Plaintiff's Brief on Appeal at 11.) Based upon the jury instructions regarding what the jury needed to find in order to support a verdict of reckless indifference as well as what the jury needed to find in order to support a verdict of malice, we find that the district court erred in capping the damages.

In *Zoppo v. Homestead Insurance Co.*, 644 N.E.2d 397, 399, 401-02 (Ohio 1994), the Ohio Supreme Court held that § 2315.21(C)(2) of the Ohio Revised Code, the section which required a court to set the amount of punitive damages even in jury trials, violated the right to trial by jury under the Ohio Constitution. As a result, unlike the federal statute (§ 1981a), punitive damages are not capped under Ohio law. *See id.* The Ohio Supreme Court also noted that punitive damages may be recovered upon proof of "actual malice." *Id.* at 402. "Actual malice" for purposes of satisfying the award of punitive damages is defined under Ohio law as "'(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, *or* (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm.'" *Id.* (emphasis is original) (quoting *Preston v. Murty,* 512 N.E.2d 1174 (Ohio 1987)).

Here, in charging the jury before deliberations, the district court instructed as follows regarding the award of punitive damages:

> In this case, you may award punitive damages if you find that the Defendant Consolidated Freightways engaged in a discriminatory and/or retaliatory practice or practices with malice or reckless indifference to the rights of Plaintiff James Hall to be free from such intentional discrimination and/or retaliation in employment.
>
> Malice is defined as either:
>
> One, that state of mind in which a person's conduct is characterized by hatred, ill-will, or spirit of revenge, or

> Two, a conscious disregard for the rights and safety of other persons that has a great probability of creating substantial harm.
>
> Reckless indifference means indifference of an egregious character to the plaintiff's rights to be free of such discriminatory or retaliatory conduct. Reckless indifference reflects that entire want of care which would raise the presumption of a ***conscious indifference*** to consequences.

(J.A. at 309-10 (emphasis added).)

"Indifference" is defined as "the quality, state, or fact of being indifferent." *See* WEBSTER'S NEW COLLEGIATE DICTIONARY 585 (1974). "Indifferent," in turn, is defined as "that [which] does not matter one way or the other" or to be "marked by a lack of interest in or concern about something." *See id.* "Disregard" is defined as "to pay no attention to," or to "neglect." *See id.* at 330. Because the district court instructed the jury that "reckless indifference" was that conduct which would raise a presumption of a "conscious indifference" to the consequences of Defendant's actions, a finding of "reckless indifference" by the jury was sufficient to meet Ohio's definition of "actual malice." *See Zoppo*, 644 N.E.2d at 402 (defining "actual malice" as "'a *conscious disregard* for the rights and safety of other persons that has a great probability of causing substantial harm'" (emphasis added)). In other words, because Ohio defines "actual malice" in the alternative as acting with a "conscious disregard," and because the district court in the matter at hand instructed the jury that "reckless indifference" was that conduct which rises to the level of creating a "conscious indifference" to the consequences of one's actions, the district court erroneously concluded that it was unable to determine whether the jury found actual malice for purposes of satisfying Ohio's requirements for awarding punitive damages. *See* J.A. at 74-76 (indicating the district court's

ruling that because "the jury concluded that there was malice or recklessness in the Defendant's conduct does not necessarily mean that it concluded that there was *actual* malice – as would be required by Ohio law. Because we do not have an affirmative finding of malice, the Ohio standard is not satisfied"). We see no appreciable difference between a "conscious indifference" or a "conscious disregard" for purposes the jury's awarding punitive damages under Ohio law in this case. Although Defendant is correct in noting that the Ohio Supreme Court has specifically rejected "any definition of 'actual malice' which include[s] recklessness as an element," "recklessness" was not made an element here; rather, pursuant to the jury instructions, "recklessness" was defined as a "conscious disregard" which the Ohio courts recognize as meeting the standard for "actual malice." *See Motorists Mut. Ins. Co. v. Said*, 590 N.E.2d 1228, 1234 (Ohio 1992), *rev'd on other grounds*, *Zoppo*, 644 N.E.2d at 399.

We find support for our conclusion in *Martini v. Federal National Mortgage Assoc.*, 178 F.3d 1336 (D.C. Cir. 1999), wherein the United States Court of Appeals for the D.C. Circuit held that punitive damages awarded in excess of the federal statutory cap could be reallocated to the plaintiff's award for punitive damages awarded under the D.C. Human Rights Act. *See id.* at 1349. In *Martini*, the plaintiff had filed suit under Title VII and the D.C. Human Rights Act against her former employer, Federal National Mortgage Association ("Fannie Mae"), and former supervisors, claiming sexual harassment and retaliation. *Id.* at 1338. The jury found Fannie Mae liable under both the federal and state statutes, and awarded a total of nearly seven million dollars. *Id.* Specifically, pursuant to a verdict form with "special interrogatory questions" for assessing damages for each type of claim against each defendant (Fannie Mae or a named supervisor) under each statute (Title VII or D.C. Human Rights Act), the jury awarded $153,500 in backpay, $1,894,000 in front pay and benefits, and $3,000,000 in punitive damages under Title VII; as well as $615,000 in

compensatory damages and $1,286,000 in punitive damages under the D.C. Human Rights Act. *Id.* at 1339, 1349. Pursuant to a post-trial motion, the district court, among other things, reduced damages awarded under Title VII to $453,500 pursuant to the statutory cap. *Id.* at 1340. The plaintiff appealed to the D.C. Circuit arguing, among other things, that "any Title VII damages exceeding the cap should be reallocated to her D.C. Human Rights Act recovery." *Id.* at 1349. The D.C. Circuit agreed. *Id.*

In so ruling, the court began by noting that "[t]he district court gave the jury a single set of instructions applicable to Martini's claims under both Title VII and the D.C. Human Rights Act[,]" and, "[a]s required by law, the court never informed the jury about Title VII's damages cap." *Martini*, 178 F.3d at 1349. The court went on to reason:

> Because the jury used exactly the same instructions in evaluating Martini's Title VII and D.C. law claims, and because the jury had no knowledge of Title VII's damage cap, it had no legal basis for distinguishing between the two statutes. Thus, for any one claim against any one defendant, distinguishing between damages that the jury awarded under Title VII and damages that it awarded under the D.C. Human Rights Act makes no sense. . . . To be sure, only $300,000 of [the award] may be awarded under Title VII. *But we see no reason why Martini should not be entitled to the balance under the D.C. Human Rights Act, since the local law contains the same standards of liability as Title VII but imposes no cap on damages.*

*Id.* (emphasis added).**3** Similarly, in the matter at hand, where the jury was instructed in such a fashion sufficient to support punitive damage awards under both the federal as well as the state statute, Plaintiff should be entitled to the balance of the award in excess of the federal $300,000 cap under state law.

In light of this conclusion, we need not address Plaintiff's alternative argument that the jury's finding of retaliation necessarily included a finding of actual malice for purposes of satisfying Ohio's standard for awarding punitive damages.

## CONCLUSION

For the reasons set forth above, we **AFFIRM** the district court's order denying Defendant's motion for judgment as a matter of law with respect to jury's award of punitive damages in Case No. 00-4431; we **REVERSE** the district court's order capping the jury's award of punitive damages under the federal statute in Case No. 00-4316; and **REMAND** the case to the district court with instructions to reinstate the jury's full award of damages.

---

**3**The jury instructions themselves were not set forth in *Martini.* However, § 1981a provides that punitive damages may be awarded "if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to federally protected rights of an aggrieved individual," *see* 42 U.S.C. § 1981a, while the D.C. Human Rights Act provides that punitive damages are available if the "employee can establish evil motive or actual malice on [the] part of her employer." *See* D.C. Code Ann. § 2-1403.16 (2001). Therefore, without knowing precisely how the jury was instructed, it would appear that the fact that the D.C. statute requires actual malice, but the federal statute requires actual malice or reckless indifference, was of no consequence to the court's finding that damages awarded in excess of the federal cap could be reallocated to the state award.

---

## CONCURRENCE

---

MARTHA CRAIG DAUGHTREY, Circuit Judge, concurring. As the majority notes, the plaintiff in this case advanced alternative theories upon which the jury's award of punitive damages could be sustained under state law, despite the federal cap in § 1981a. The majority takes great pains to uphold the award under both theories, including what I find to be a somewhat strained analysis with regard to whether the jury instructions on "reckless indifference" and "conscious disregard" can support a finding of "actual malice," the prerequisite in Ohio for an award of punitive damages. Nevertheless, I conclude that the jury could, and undoubtedly did, find that the defendant's retaliation in this case met the Ohio definition of "actual malice" as "that state of mind under which a person's conduct is characterized by . . . a spirit of revenge." *Zoppo v. Homestead Insurance Co.*, 644 N.E.2d 397, 402 (Ohio 1994).

For this reason, and because I concur in the remainder of the majority's analysis on the issues raised in both the appeal and the cross-appeal in this case, I would reach the same result as the majority does in reinstating the jury's full award of damages.